```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MIGUEL BAUTISTA,                                            :
                                    Plaintiff,              :
                                                            :         20 Civ. 4676 (LGS)
                -against-                                   :
                                                            :         **OPINION AND ORDER**
CHANEL, INC., et al.,                                       :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Miguel Bautista brings this action alleging violation of the discrimination and anti-retaliation provisions of Title VII and the New York City Human Rights Laws ("NYCHRL"). Plaintiff alleges that he was wrongfully disciplined and terminated by his former employer, Defendant Chanel, Inc., because of race and national origin discrimination following complaints that he lodged against his former supervisor, Defendant Julie Papaioannou. Defendants move for summary judgment on all claims. For the reasons discussed below, Defendants' motion is denied.

**I.   BACKGROUND**

The background facts below are drawn from the parties' Rule 56.1 statements and other submissions on these motions. The facts are undisputed or based on evidence in the record drawing all reasonable inferences in favor of Plaintiff, the non-moving party.

From May 2015 to January 17, 2019, Plaintiff was employed by Defendant Chanel at its Saks Fifth Avenue boutique. From September 2016 through January 2019, Defendant Papaioannou was Plaintiff's supervisor. Plaintiff alleges that Defendant Papaioannou

discriminated against him because Plaintiff is Latino, is from Ecuador, and speaks English with a thick accent.

On or about September 25, 2017, Defendant Papaioannou mocked Plaintiff's accent during a meeting with him. After giving him work-related instructions, she ended the meeting by asking him, "Comprende?" Plaintiff testified that her tone was "condescending, . . . like a child, when you talk to a child."

On three occasions in 2017 and 2018, Defendant Papaioannou confronted Plaintiff about alleged sales violations. Later investigation revealed that no policy violations had occurred.

The first incident, in September 2017, concerned duplicate receipts that Plaintiff and another employee had submitted to obtain commission for the same sale. Only one sales associate generally is permitted to submit a duplicate receipt for a particular sale. On this occasion, Plaintiff submitted his receipt with the authorization of another manager. Defendant Papaioannou met with Plaintiff at some point and "questioned him about the receipt" and accused him of "technically stealing from the company." Catherine Koenig (Human Resources) later determined that Defendant Papaioannou had confronted Plaintiff "before doing the due diligence" to confirm Plaintiff had done anything wrong.

The second incident, in January 2018, concerned a change in Chanel's selling limit policy for items with the same stock keeping unit ("SKU"). In October 2017, Defendant Papaioannou emailed Plaintiff and other employees a reminder that the selling limit for products of the same SKU was five. On November 6, 2017, the limit was reduced to three items. During a one-on-one meeting in January 2018, Defendant Papaioannou questioned Plaintiff and told Plaintiff that he had violated the selling limit policy because he had submitted a receipt containing more than three items with the same SKU. The investigation revealed that Plaintiff had not violated the

selling limit policy because the date of the sale had been October 28, 2017, when the five-item limit was still in effect. Defendant Papaioannou later confirmed as much in an email to Plaintiff.

The third incident, in February 2018, concerned an alleged violation of Defendant Chanel's policy that limits the number of items a customer can purchase in a single transaction. In December 2017, Bautista submitted a single receipt with eleven items. In or about February 2018, Defendant Papaioannou confronted Plaintiff about the receipt. Plaintiff responded that, per company policy, another manager had approved the submission of the receipt. Defendant Papaioannou subsequently confirmed that Plaintiff's submission was not a violation.

Around the same time, on or about February 8, 2018, Defendant Papaioannou approached Plaintiff and two other employees while they were speaking in Spanish at the beauty counter and told them that they were not to speak Spanish at the counter unless they were assisting a Spanish-speaking customer. Shortly after Defendant Papaioannou's instruction, Plaintiff taped a conversation between him and Defendant Papaioannou in which Defendant Papaioannou told Plaintiff that he was not permitted to speak Spanish at the counter because "this is a work environment." Defendant Papaioannou testified that she meant "clients are constantly walking by, Saks management is walking by, so we just want to keep it professional, like speaking English at the counter."

On February 16, 2018, Plaintiff made a complaint of discrimination against Defendant Papaioannou to Koenig. Plaintiff claimed that Defendant Papaioannou admonished only Spanish-speaking employees and not other employees, who spoke French and Chinese. On March 22, 2018, Koenig gave Defendant Papaioannou a letter regarding the results of the investigation. Koenig concluded that four Spanish-speaking employees had been told not to speak in Spanish, and "that the communication [of the no-Spanish instruction] was not in the

3

way in which it should have been, and . . . there was the potential to improve in the way in which it was addressed."

On or about August 9, 2018, Alicia Acosta, one of Plaintiff's colleagues, replied to a post on Facebook by another Chanel employee, writing "Lol finally a word in Spanish ! Thank God u r not at work[,] Spanish not welcome !" Defendant Papaioannou saw the post and sent an email to Koenig, copying two other Chanel managers. In the email, Papaioannou said she found Acosta's comment "concerning" due to "[t]he sensitive matter that occurred earlier this year between myself and [Plaintiff]. The allegations that were brought against me in which no merit was found in them. However, I was still very distraught by them and this has stirred up those emotions yet again." Defendant Papaioannou continued: "The fact that 90% of the team here at Saks as well as other Chanel employees are friends with Toni on social media and the perception Alicia's messaging depicts about our work environment, as well as that of CHANEL as a corporation." Koenig did not believe Acosta's comment violated the company's social media policy.

On November 11, 2018, a customer came into Defendant Chanel's boutique. The parties disagree as to what transpired, but generally agree that a freelance make-up artist applied the customer's make-up and that Plaintiff helped or assisted at least five times and that Plaintiff later entered the corresponding sale under his employee number. After the sale, Defendant Papaioannou approached Plaintiff and told him that the customer was not his customer, that he was not assisting the customer, and that she "saw everything." At some point during the conversation, the two moved to the back of the boutique and Plaintiff began recording their conversation. Plaintiff told Defendant Papaioannou that Plaintiff entered the sale because the customer was a client, he had introduced the customer to the make-up artist, assisted during the

4

sale and added the customer to his "My Client Book" at the end of the transaction because he had given the customer samples and intended to follow-up with her.  In addition, Plaintiff told Defendant Papaioannou that she was retaliating against him "because you're always targeting me, always, always."

On November 14, 2018, Koenig began to investigate the incident.  Koenig did not investigate whether Plaintiff had contact with the customer prior to the November 11, 2018, sale, and instead relied on screenshots from Defendant Papaioannou.  Following interviews with Plaintiff, Defendant Papaioannou and the make-up artist, Defendants terminated Plaintiff's employment in January 2019.

On January 11, 2019, Koenig and Defendant Papaioannou had a call in which Defendant Papaioannou stated that she "felt relieved" that Bautista was being terminated, that she wanted to vocalize "from the beginning but didn't know if she could," that she was in complete "agreeance based on the history & this current situation that he should be terminated," and that she felt "from the beginning this was what she wanted to do."  Defendant Papaioannou testified that she "felt like [she] had been walking on eggshells for a very long time and this situation was just a culmination of everything that I had been feeling over anxiety."  Defendant Papaioannou said that she felt this way "[b]ecause of [Plaintiff's] reactions to [her]," and because "[t]here was always push-back."  Neither Plaintiff nor Defendants allege that Defendant Chanel terminated Plaintiff's employment due to his work performance.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).

**III.    DISCUSSION**

**A.    Title VII Discrimination**

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a summary judgment motion, courts apply the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019). First, a plaintiff must establish a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference

6

of discriminatory intent.  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  Adverse employment actions include termination, demotion, a decrease in wage or salary, a material loss of benefits, and other indices unique to a particular situation.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71-72 (2d Cir. 2019); *Gilani v. Teneo, Inc.*, No. 20 Civ. 1785, 2021 WL 3501330, at *19 (S.D.N.Y. August 4, 2021).

If Plaintiff succeeds in establishing a prima facie case, then the burden shifts to Defendants to produce a legitimate nondiscriminatory reason for the adverse action.  *McDonnell*, 411 U.S. at 802; *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016).  If Defendants provide a nondiscriminatory explanation for the adverse action, then the burden shifts back to Plaintiff to "establish, by a preponderance of evidence, that [Defendants'] justification is a pretext for discrimination."  *Lenzi*, 944 F.3d at 108 (quoting *Legg v. Ulster County*, 820 F.3d 67, 73-74 (2d Cir. 2016)).  Defendants' motion for summary judgment is granted unless Plaintiff proffers sufficient evidence to permit a rational fact finder to infer that race was a "motivating factor" for Defendants' employment decision, i.e., that Plaintiff was discriminated against, at least in part because of her protected status.  *See Lenzi*, 944 F.3d at 108.

      **i.**    **Prima Facie Case**

Defendants challenge whether Plaintiff has proffered sufficient evidence of discriminatory intent.  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

7

Plaintiff has met this burden by identifying evidence from which a reasonable jury could reach a verdict in his favor. *Liberty Lobby, Inc.*, 477 U.S. at 248. Plaintiff testified that in September 2017, Defendant Papaioannou, his direct supervisor, gave him work-related instructions and confirmed his understanding by asking "Comprende?" in a condescending tone. Over the next six months, Defendant Papaioannou opened three investigations into Plaintiff's sales conduct, none of which had merit. Around the same time as the third investigation, Defendant Papaioannou approached Plaintiff and two other Spanish-speaking employees and told the group that they were not to speak in Spanish at the counter, despite Defendant Chanel not having a corporate "English-only" policy. Plaintiff further testified that Defendant Papaioannou insinuated that speaking Spanish was not "professional" and that other employees who spoke languages other than English, including French and Chinese, were not similarly admonished.

Defendants focus on the "comprende" comment as a "stray remark" that cannot sustain Plaintiff's discrimination claim. This argument is unavailing. Even the case law that Defendants cite recognizes that "such comments, *without more,* cannot get a discrimination suit to a jury. . . . When, however . . . , other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). Here, a reasonable jury could infer discriminatory intent from the evidence as a whole.

Defendants' other arguments similarly are unpersuasive. Defendants argue that the comments and the adverse employment action were too far apart to suggest discriminatory intent. This argument fails to consider other evidence in the record -- including three investigations of Plaintiff in the intervening period and the institution of a "No Spanish" policy -- which narrows

the gap between Defendant Papaioannou's comments and Plaintiff's ultimate firing.  This evidence provides a sufficient basis to infer discriminatory intent.

### ii. Reason for Firing as Pretextual and Discrimination as a Motivating Factor

Plaintiff does not dispute that Defendants have satisfied the second step of the *McDonnell Douglas* inquiry by producing evidence that Plaintiff was fired for a non-discriminatory reason, namely that Defendants determine that he allegedly lied about his prior contact with the Jane Doe customer.  As a result, Plaintiff may no longer rely on the presumption of discrimination raised by the prima facie case.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255-56 (1981).

At the final step of the *McDonnell Douglas* inquiry, courts consider "whether, without the aid of the presumption, [Plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire him was based, at least in part, on [his race or national origin]."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008).  The Second Circuit has "stress[ed]" that a plaintiff who "claims that the employer acted with mixed motives is not *required* to prove that the employer's stated reason was a pretext."  *Id.* at 141-42.  Rather, "[a] plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that [discrimination] was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation."  *Id.* at 142 (internal quotation marks omitted).

The record evidence is sufficient for a reasonable jury to conclude that discrimination was a motivating factor in Plaintiff's termination.  First, there is a question of fact whether Defendants had a reasonable basis for their proffered reason for terminating Plaintiff.  Defendants assert that Plaintiff was terminated because he "lied" during an internal investigation

9

into the November 2018 sales incident where he entered a sale under his employee number after a freelance makeup artist applied the customer's make-up. Plaintiff told Defendants that he had previous contact with the customer and asserts that Defendant Papaioannou's screen shots did not reflect this contact because of alternate spellings of the customer's name. Regarding the incident leading to the termination, Plaintiff testified that, although the freelancer applied the customer's make up, Plaintiff assisted by pulling products and samples for the client and recommending a specific product such that the commission was appropriate. When asked to review security footage at her deposition, Defendant Papaioannou also stated that it appeared Plaintiff helped the client in-question at least five times.

In addition, according to Koenig's contemporaneous notes, the overall decision to terminate Plaintiff was made by Defendant Papaioannou. The notes also state that, on January 11, 2019, Defendant Papaioannou told Koenig that she "felt relieved" that Plaintiff was being terminated, that she wanted to express "from the beginning but didn't know if she could," that she was in complete "agreeance based on the history & this current situation that he should be terminated," and that she felt "from the beginning this was what she wanted to do." A jury could reasonably infer from all of the evidence that the internal investigation and resulting termination were motivated at least in part by discriminatory animus. Accordingly, Defendants' summary judgment motion is denied as to the Title VII discrimination claim. *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) ("[T]he question of what motivated an employer's desire to fire a worker is a quintessential jury function.").

### B. Title VII Retaliation

Title VII prohibits employers from retaliating "against any . . . employee[ ] . . . because [that individual] has opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Rasmy*, 952 F.3d at 391. A Title VII retaliation claim is subject to the same *McDonnell Douglas* burden-shifting standard as his Title VII discrimination claim. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).

Defendants challenge only the third of these elements -- i.e., whether Plaintiff has shown a causal connection between his engaging in protected activity and the adverse employment action. Defendants argue that Plaintiff's reporting Defendant Papaioannou in February 2018 (after the "no Spanish" policy) and his eventual firing in January 2019 are too attenuated to support such an inference.

"Constru[ing] the evidence in the light most favorable to the nonmoving party," *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020), Plaintiff has proffered sufficient evidence to establish that Defendant Papaioannou harbored retaliatory animus from Plaintiff's discrimination complaint as recently as August 2018, just three months before Plaintiff's termination.

Following another employee's August 2018 social media comment that "Spanish not welcome" at work, Defendant Papaioannou emailed Koenig, copying two other Chanel managers. In the email, Papaioannou stated that she found the comment "concerning" due to "[t]he sensitive matter that occurred earlier this year between myself and [Plaintiff]" and she

11

"was still very distraught by them and this has stirred up those emotions yet again."  A reasonable jury could conclude that "the combination of reasonably close temporal proximity and the particular context in this case is sufficient to infer causation in establishing a prima facie case of retaliation."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 128-29 (2d Cir. 2013) (seven-month gap); *see also Rasmy*, 952 F.3d at 391 ("Questions regarding the time gap and causal connection of an alleged retaliatory termination may entail special consideration of the size and complexity of a defendant employer, where termination of employment may involve multiple layers of decisionmakers, as well as the nature of plaintiff's claims.").

As discussed above, although Defendants have offered a non-discriminatory reason for firing Plaintiff, the evidence raises a question of fact about the entire motivation behind Plaintiff's termination, including whether it was caused at least in part in retaliation for Plaintiff's complaint about Papaioannou or in part for discriminatory reasons.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage.").  Defendants' motion for summary judgment is denied as to Plaintiff's Title VII retaliation claim.

    C.    **NYCHRL**

For the same reasons, the NYCHRL discrimination and retaliation claims also survive Defendants' summary judgment motion.  The NYCHRL is less demanding of a claimant than Title VII, and Plaintiff may prove an adverse employment action simply by showing that she was treated "less well."  *See Emamian v. Rockefeller Univ.*, 971 F.3d 380, 390 (2d Cir. 2020) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *accord Hamburg v. N.Y.U. Sch. of Med.*, 155 A.D.3d 66, 73 (1st Dep't 2017); *Sanderson-*

*Burgess v. City of N.Y.*, 173 A.D.3d 1233, 1235 (2nd Dep't 2019).  Here, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants treated Plaintiff less well because of discriminatory animus based on Plaintiff's race or national origin.  *See Mihalik*, 715 F.3d at 109-10 ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (internal quotation marks and citations omitted)).  The same is true for Plaintiff's NYCHRL retaliation claim.  *Ya-Chen Chen*, 805 F.3d at 76 ("[W]e note that NYCHRL's retaliation provision is broader than Title VII's -- protecting plaintiffs who oppos[e] any practice forbidden under the law from conduct reasonably likely to deter a person engaging in such action." (internal quotation marks omitted)).  Accordingly, Defendants' motion for summary judgment on the NYCHRL claims is denied.

        **D.**     **Direct Liability**

The NYCHRL creates direct liability for individual defendants by making it unlawful "[f]or an employer or an employee or agent thereof, because of . . . race . . . to discriminate against such person in . . . terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(a).  As an actual participant in the conduct at issue, Defendant Papaioannou can be held personally liable under the NYCHRL.  *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *accord Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) ("Employees may be held personally liable under . . . the NYCHRL if they participate in the conduct giving rise to a discrimination claim."). Plaintiff's NYCHRL claims against Defendant Papaioannou survive summary judgment.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. No. 57. A trial scheduling order will follow.

Dated: February 8, 2022
       New York, New York

                                            LORNA G. SCHOFIELD
                                   UNITED STATES DISTRICT JUDGE